OPINION
{¶ 1} Appellant, the state of Ohio, appeals the decision of the Butler County Area II Court to grant in part a motion to suppress evidence on charges of driving under the influence ("OVI").
 {¶ 2} Defendant-appellee, William C. Lange, was charged with the OVI-related *Page 2 
offenses of R.C. 4511.19(A)(1)(a) and R.C. 4511.19(A)(1)(d), [1] in connection with the circumstances and events that occurred after police stopped appellee's vehicle for a headlight violation.
 {¶ 3} Appellee filed a motion to suppress, and the trial court ruled that probable cause existed to arrest appellee for driving while impaired under R.C. 4511.19(A)(1)(a), but suppressed evidence of the results of the horizontal gaze nystagmus ("HGN") and the walk and turn field sobriety tests, and the results of a breathalyzer ("BAC") test. The state filed a Crim. R. 12(K) appeal, presenting three assignments of error for our review.
 {¶ 4} An appellate court's review of a ruling on a motion to suppress presents a mixed question of law and fact. State v. Long (1998),127 Ohio App.3d 329, 332. A reviewing court must accept the trial court's findings of fact if they are supported by competent, credible evidence.State v. Bryson (2001), 142 Ohio App.3d 397, 402; State v. Forbes, Preble App. No. CA2007-01-001, 2007-Ohio-6412, ¶ 29. The appellate court then determines as a matter of law, without deferring to the trial court's conclusions, whether the trial court applied the appropriate legal standard. Bryson; Forbes.
 {¶ 5} The state alleges in its first assignment of error that the trial court erred in suppressing the results of the HGN field sobriety test.
 {¶ 6} "In any criminal prosecution relating to the operation of a vehicle with a prohibited concentration of alcohol, * * * if a law enforcement officer has administered a field sobriety test to the operator of the vehicle involved in the violation and if it is shown by clear and convincing evidence that the officer administered the test in substantial compliance with the testing standards for any reliable, credible, and generally accepted field sobriety tests that were in effect at the time the tests were administered, including, but not limited to, any testing *Page 3 
standards then in effect that were set by the national highway traffic safety administration, all of the following apply:
 {¶ 7} "(i) The officer may testify concerning the results of the field sobriety test so administered.
 {¶ 8} "(ii) The prosecution may introduce the results of the field sobriety test so administered as evidence in any proceedings in the criminal prosecution or juvenile court proceeding.
 {¶ 9} "(iii) If testimony is presented or evidence is introduced under division (D)(4)(b)(i) or (ii) of this section and if the testimony or evidence is admissible under the Rules of Evidence, the court shall admit the testimony or evidence and the trier of fact shall give it whatever weight the trier of fact considers to be appropriate." R.C. 4511.19(D)(4)(b); see State v. Boczar, 113 Ohio St.3d 148,2007-Ohio-1251, ¶ 28.
 {¶ 10} The state concedes that the arresting officer, in performing the portion of the HGN test that measures the onset of nystagmus prior to 45 degrees, took two seconds to move the stimulus rather than the four seconds outlined in the National Highway Transportation Safety Administration ("NHTSA") manual for standardized field sobriety tests.
 {¶ 11} After reviewing the record of the trial court's findings and conclusions related to the HGN test and the onset of nystagmus prior to 45 degrees in particular, we find that the trial court erred when it both concluded that the state failed to show by clear and convincing evidence that the HGN test was administered in substantial compliance with the testing standards and when it suppressed the results of the HGN test. See Cleveland Heights v. Schwabauer, Cuyahoga App. No. 84249,2005-Ohio-24, ¶ 24-25 (where officer, in addition to two other variations in compliance with the HGN test, checked onset of nystagmus prior to 45 degrees by moving the stimulus across the field of vision for two to three seconds instead of four seconds, HGN test was administered in substantial compliance; NHTSA manual cautions *Page 4 
that if officer moves stimulus too fast, officer may go past point of onset or miss it altogether, so presumably moving the stimulus in strict compliance with manual would have rendered same, if not worse results, and therefore, no prejudice to defendant is shown).
 {¶ 12} The state's first assignment of error is sustained.
 {¶ 13} The state argues under its second assignment of error that the trial court erred in suppressing the results of the walk and turn field sobriety test when the officer did not inquire prior to administering the test whether appellee had any physical issue or infirmity.
 {¶ 14} According to the record, appellee attempted to perform the walk and turn test, but had problems successfully completing the test before he refused to continue. When the officer began to explain the one-leg stand test to him, appellee informed the officer that he had leg problems, and the officer halted that test.
 {¶ 15} The state acknowledges that the officer did not inquire about whether appellee had any physical problems before the walk and turn test, but argues that the test was administered in substantial compliance with NHTSA standards, and the results of the test should not have been suppressed. Specifically, the state cites to two previous cases from this court for the general proposition that substantial compliance can be shown despite the omission of small portions of the testing requirements.
 {¶ 16} We cannot ignore the fact that the walk and turn test was performed by appellee without the officer's consideration of and adaptation for appellee's alleged physical problem. The purpose of the walk and turn test to assist the officer in determining possible impairment is thwarted by the officer's lack of knowledge of appellee's leg problem. Under the specific facts of this case, we agree with the trial court's conclusion that the results of the walk and turn field sobriety test should be suppressed. The state's second assignment of error is overruled.
 {¶ 17} The state's third assignment of error challenges the trial court's suppression of *Page 5 
the results of appellee's breathalyzer test because the senior operator did not follow one instruction in the breathalyzer's manual or "Supervisor Guide" regarding the instrument check.
 {¶ 18} The senior operator testified on direct examination that he saw no indication that the breathalyzer machine was not in proper working order. The trial court's factual findings focused on the fact that the senior operator acknowledged on cross-examination that the test solution was "slightly" on the low end on two instrument checks around the time of appellee's test. The trial court concluded that, given the senior operator's failure to follow the breathalyzer's manual for instrument checks and the uncertainty about the instrument check reading, the state failed to meet its burden to show that the machine was in proper working order.
 {¶ 19} We find that the trial court erred in concluding that the testing instrument was not in proper working order based upon the fact that the senior operator failed to follow a procedure listed in the breathalyzer manual, and, therefore, the trial court erred in suppressing the evidence. State v. Stout, Licking App. No. 07-CA-51,2008-Ohio-2397, ¶ 120 (where law is that state must show (1) the instrument was in proper working order; (2) its operator had the proper qualifications to conduct the test; and (3) the test was conducted in substantial compliance with the Ohio Department of Health regulations, court held that it is within the sole authority and discretion of the Ohio Department of Health to determine the guidelines necessary to establish whether the machine is in proper working order, and any other ancillary manuals, including the manufacturer's manual, are advisory only and not required unless and until adopted by the Ohio Department of Health); see State v. Browning, Warren App. No. CA2007-10-118,2008-Ohio-2905, ¶ 9 (express wording of Ohio Department of Health regulations does not impose requirement that BAC test be performed in strict compliance with BAC machine's operator's manual; only health regulation referring to operator's manual states that it should be on file in area where alcohol test is performed); see, *Page 6 
also, R.C. 3701.143 (director of health to determine techniques and methods for, qualifications of, and issue permits to persons to conduct chemical analysis of amount of alcohol in body); Ohio Adm. Code 3701-53-01 (the operational manual provided by the instrument's manufacturer shall be on file in the area where the breath tests are performed); Ohio Adm. Code 3701-53-02 (breath samples shall be analyzed according to the operational checklist for the instrument being used and checklist forms recording the results of subject tests shall be retained; results shall be recorded on forms prescribed by the director of health); Ohio Adm. Code 3701-53-04.
 {¶ 20} The state's third assignment of error is sustained.
 {¶ 21} This cause is affirmed in part and reversed in part and remanded to the trial court for further proceedings in accordance with the law and consistent with this opinion.
YOUNG and POWELL, JJ., concur.
[1] Appellee's citation also contained a charge related to his operator's license, but that charge is not part of this appeal. *Page 1