[Cite as *Middleburg Hts. v. Gettings*, 2013-Ohio-3536.]

# Court of Appeals of Ohio

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

---

JOURNAL ENTRY AND OPINION
**No. 99556**

---

# CITY OF MIDDLEBURG HEIGHTS

PLAINTIFF-APPELLEE

vs.

# EUGENE J. GETTINGS, III

DEFENDANT-APPELLANT

---

## JUDGMENT:
## AFFIRMED IN PART, REVERSED IN PART
## AND REMANDED

---

Criminal Appeal from the
Berea Municipal Court
Case No. 11 TRC 05221

**BEFORE:** E.A. Gallagher, J., Boyle, P.J., and Rocco, J.

**RELEASED AND JOURNALIZED:** August 15, 2013

**ATTORNEY FOR APPELLANT**

Patrick D. Quinn
2802 Som Center Rd., #102
Willoughby Hills, OH   44094


**ATTORNEY FOR APPELLEE**

Peter H. Hull
Law Director
City of Middleburg Heights
15700 E. Bagley Road
Middleburg Hts., OH   44130

EILEEN A. GALLAGHER, J.:

{¶1} Eugene J. Gettings, III, appeals from the denial of his motion to suppress in the Berea Municipal Court. Gettings argues the trial court erred in determining that the arresting officer performed the field-sobriety tests in compliance with national guidelines and in finding that the officer had probable cause to stop and arrest him for operating a vehicle while intoxicated. For the following reasons, we affirm in part, reverse in part and remand for proceedings consistent with this opinion.

{¶2} In the early morning hours of December 24, 2011, Middleburg Heights police officer Dennis Santiago observed a silver Chevy Traverse weaving as it traveled westbound on Bagley Road. Santiago testified that he saw the vehicle weaving to the left, drive on top of lane lines and even cross halfway into the center lane of Bagley Road. Santiago stopped the vehicle in the parking lot of Perkins restaurant and the driver was identified as Eugene J. Gettings, III.

{¶3} Gettings initially related to Santiago that he did not know why he was stopped but after hearing why, Gettings stated that he was "messing around" with his radio, which may have caused him to weave. Santiago testified that he asked Gettings for his license and insurance information and that it took Gettings an unusually long time to produce the documents. Additionally, when asked from where he was coming, Gettings provided the officer with three different stories. Santiago testified that he asked Gettings if he had been drinking, to which Gettings admitted that he consumed two

beers and he further testified that Gettings' eyes were bloodshot, watery and glassy, his speech was slurred and slow and that he had a strong odor of alcohol emanating from his person.

{¶4}   Santiago conducted a couple of "pre-exit" tests.   While Gettings remained in the vehicle, Santiago performed a "condensed" Horizontal Gaze Nystagmus (HGN) test, the finger dexterity test, the number count and the alphabet recitation.   He testified that he observed impairment in both eyes during the HGN test, observed clues of impairment on the finger dexterity test as well as in both the number count and alphabet recitation.   In particular, when ordered to count down from 89 to 65, backwards, Gettings stopped at the number 80 and failed to respond at all when asked to recite from D to P in the alphabet.

{¶5}   Santiago testified that he asked Gettings to exit the vehicle so that he could perform   the three standardized field-sobriety tests as outlined by the National Highway Traffic Safety Administration (NHTSA).   Santiago performed the "walk-and-turn test," the "one-leg-stand," and the HGN test and testified that Gettings failed all three. Santiago testified that he performed all field-sobriety tests in compliance with the NHTSA standards and that it was his belief that Gettings was under the influence of alcohol.

{¶6}   The city and Gettings stipulated to the results of a breath alcohol test, which indicated a .177 breath alcohol content.   Santiago cited Gettings for OVI, in violation of R.C. 4511.19(A)(1)(a), BAC (breath) .17 or higher, in violation of R.C. 4511.19(A)(1)(h), driving under suspension — failure to reinstate, in violation of R.C.

4510.21 and continuous lanes weaving in violation of R.C. 4511.33(A)(1). Gettings filed a motion to suppress, and the trial court conducted a hearing. In his motion, Gettings argued that Officer Santiago did not have probable cause to perform the field-sobriety tests, that there was no probable cause to arrest for OVI and that Santiago did not perform the field-sobriety tests in compliance with NHTSA. The trial court overruled Gettings' motion finding that Officer Santiago had reasonable suspicion to conduct field-sobriety tests and that he conducted them in substantial compliance with NHTSA standards and that the officer had probable cause to arrest for OVI.

{¶7} Gettings pleaded no contest to operating a vehicle while intoxicated and was found guilty. Pursuant to an agreement with the city, all remaining charges were dismissed. The trial court sentenced Gettings to ten days in jail, imposed a fine of $750 and a 730-day license suspension, ordered Gettings to pay court costs and placed him on two years of probation with multiple conditions. Gettings' motion to stay execution of his sentence was granted. Gettings appeals, raising the following two assigned errors:

Assignment of Error I

The Trial Court erred in finding that the Standardized Field-sobriety tests were conducted in substantial compliance with NHTSA Guidelines.

Assignment of Error II

The Trial Court erred in finding probable cause for Appellant's OVI, stop and arrest.

{¶8} In his first assigned error, Gettings argues that the trial court erred when it found that Santiago substantially complied with the NHTSA standards. We agree.

Appellate review of a motion to suppress presents a mixed question of law and fact. When considering a motion to suppress, the trial court assumes

the role of trier of fact and is therefore in the best position to resolve factual questions and evaluate the credibility of witnesses. Consequently, an appellate court must accept the trial court's findings of fact if they are supported by competent, credible evidence.

*State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, 797 N.E.2d 71.

{¶9} However, as it relates to the trial court's conclusion of law, we apply a de novo standard of review and decide whether the facts satisfy the applicable legal standard. *Id.*, *Parma Hts. v. Dedejczyk*, 8th Dist. Cuyahoga No. 97664, 2012-Ohio-3458.

{¶10} A motion to suppress must state its legal and factual bases with sufficient particularity to place the prosecutor and the court on notice of the issues to be decided. *State v. Schindler*, 70 Ohio St.3d 54, 1994-Ohio-452, 636 N.E.2d 319. Once a defendant sets forth a sufficient basis for a motion to suppress, the burden shifts to the state to demonstrate proper compliance with the regulations involved. *State v. Plummer*, 22 Ohio St.3d 292, 490 N.E.2d 902 (1986). In driving-under-the-influence cases, if a motion sufficiently raises an issue involving the applicable regulations, the state must then show substantial compliance with the regulation at issue. *Plummer*; *State v. Mai*, 2d Dist. Greene No. 2005-CA-115, 2006-Ohio-1430.

{¶11} In the present case, Gettings' motion to suppress raises 38 different reasons to suppress the results of the field-sobriety tests and the observations of the officer. The crux of Gettings' arguments, which he reiterated during the oral hearing on his motion to suppress, were that Officer Santiago did not perform the field-sobriety tests in compliance with the NHTSA standards, and that Officer Santiago did not have probable cause to arrest Gettings for OVI. Thus, Gettings sufficiently raised an issue

involving the applicable regulations; the burden then shifted to the city to show substantial compliance with the regulation at issue. *Plummer*; *Mai, supra*.

**{¶12}** As stated by this court in *Dedejczyk*:

In order for the results of field-sobriety tests to be admissible, the state is not required to show strict compliance with testing standards, but must instead demonstrate that the officer substantially complied with NHTSA standards. R.C. 4511.19(D)(4)(b); *State v. Clark*, 12th Dist. No. CA2009-10-039, 2010-Ohio-4567, ¶ 11. "A determination of whether the facts satisfy the substantial compliance standard is made on a case-by-case basis." *State v. Fink*, 12th Dist. Nos. CA2008-10-118, CA2008-10-119, 2009 Ohio 3538, ¶ 26. The state may demonstrate what the NHTSA standards are through competent testimony and/or by introducing the applicable portions of the NHTSA manual. *State v. Boczar*, 113 Ohio St. 3d 148, 2007-Ohio-1251, 863 N.E.2d 155, at ¶ 28.

But even if a court finds that the officer did not substantially comply with the NHTSA standards (which would require the results of the tests to be excluded), the officer's testimony regarding the defendant's performance on nonscientific field-sobriety tests is admissible under Evid.R. 701. *State v. Schmitt*, 101 Ohio St. 3d 79, 2004-Ohio-37, 801 N.E.2d 446, ¶ 14-15.

**{¶13}** During the hearing on Gettings' motion to suppress, the city, in support of its argument that the stop and arrest were lawful and the field-sobriety tests were compliant with NHTSA, relied on the testimony of Officer Santiago. However, when questioning Santiago about the three field-sobriety tests he performed, the city never elicited Santiago's qualifications as a police officer or his training in conducting field-sobriety testing. Further, the city asked no questions as to how Santiago conducted each of the three tests and what NHTSA requires. The city simply questioned whether the tests were performed in compliance with NHTSA, which Santiago answered in the affirmative. The city did not admit the NHTSA manual as evidence.

HGN Test

In conducting the HGN test, the NHTSA manual provides that "a police officer should instruct the suspect that [he is] going to check the suspect's eyes, that the suspect should keep [his] head still and follow the stimulus with [his] eyes, and that the suspect should do so until told to stop. After these initial instructions are provided, the officer is instructed to position the stimulus approximately 12 to 15 inches from the suspect's nose and slightly above eye level. The officer is then told to check the suspect's pupils to determine if they are of equal size, the suspect's ability to track the stimulus, and whether the suspect's tracking is smooth. The officer is then to check the suspect for nystagmus at maximum deviation and for onset of nystagmus prior to 45 degrees." The manual instructs the officer to repeat each of the three portions of the HGN test.

In addition, the NHTSA guidelines list certain approximate and minimum time requirements for the various portions of the test. For instance, when checking for smooth pursuit, the time to complete the tracking of one eye should take approximately four seconds. When checking for distinct nystagmus at maximum deviation, the examiner must hold the stimulus at maximum deviation for a minimum of four seconds. When checking for the onset of nystagmus prior to 45 degrees, the officer should move the stimulus from the suspect's eye to his shoulder at an approximate speed of four seconds.

*Clark, supra*; *Dedejczyk*; *supra.*

{¶14} Gettings argues that Santiago did not substantially comply with the NHTSA standards because he performed a "condensed" HGN test while Gettings was seated inside the vehicle[1] and that the City failed to present any substantive evidence that the HGN test conducted outside of the vehicle substantially complied with the NHTSA requirements.

{¶15} After reviewing the record, we agree that Officer Santiago did not testify to giving Gettings instructions prior to performing the HGN test; he did not testify to the

---

[1]We limit our analysis to the HGN test performed outside of the vehicle. On cross-examination, Officer Santiago admitted that the "condensed" HGN test he performed while Gettings was seated in his vehicle was not a standardized NHTSA test. As such, this "condensed" HGN test is not a recognized NHTSA-field-sobriety

manner in which the test was given and, he did not testify to the NHTSA standards.   In fact, the only testimony elicited concerning the HGN test performed outside of the vehicle is as follows:

> Q: Now, did you also administer a horizontal gaze nystagmus test outside the vehicle?
>
> A: Yes, I did.
>
> Q: And what were the results of that test?
>
> A: I received six clues on that test.
>
> Q: And what does that indicate to you?
>
> A: Clues of impairment.

{¶16} That testimony, without more, does not establish substantial compliance with the NHTSA standards for the HGN test.   As such, the trial court erred in failing to suppress the results from the HGN test performed outside of the vehicle.   *See also Mai*, 2d Dist. Greene No. 2005-CA-115, 2006-Ohio-1430.

<u>One-Leg-Stand Test, Walk-and-Turn Test:</u>

{¶17}   As stated by this court in *Dedejczyk,*

> In administering the one-leg-stand test, the NHTSA manual requires the officer to instruct subjects to begin the test with their feet together and keep their arms at their side for the entire test.   The officer must also tell the suspects that they must raise one leg, either leg, six inches from the ground and maintain that position while counting out loud for thirty seconds. NHTSA standards provide that the counting should be done in the following manner: "one thousand one, one thousand and two, until told to stop."
>
> Regarding the walk-and-turn test, the NHTSA manual states that an officer

test and cannot be used as scientific evidence of intoxication.

is required to first instruct the suspect of the initial positioning, which requires the suspect to stand with his arms down at his side, and to place his left foot on a line (real or imaginary). The suspect's right foot is to be placed on the line ahead of the left foot, with the heel of the right foot against the toe of the left foot. The suspect is then told to remain in that position while further instructions are given. These further instructions include the method by which the suspect walks while touching his heel to his tow for every step, counting the nine steps out loud while walking down the line, and making a turn with small steps with one foot while keeping the other foot on the line. The officer is also told to demonstrate the instructions to ensure that the suspect fully understands.

*See also Clark.*

{¶18} As it relates to both the one-leg-stand test and the walk-and-turn test, Gettings argues that the NHTSA manual provides restrictions on performing both of those tests on people with knee problems. In particular, Gettings' counsel instructed Officer Santiago to read the following portion of the NHTSA manual:

The original research indicated that certain individuals over 65 years of age, back, leg or inner ear problems or people who were overweight by 50 or more pounds had difficulty performing this test. Individuals wearing heels more than 2 inches high should be given the opportunity to remove their shoes.

{¶19} During the hearing, Gettings testified that he suffered from knee problems and that he walks with a limp. Specifically, Gettings testified that he told Officer Santiago that he was going to "fail because my knees — I have a torn meniscus in my right leg." Santiago admitted, under cross-examination, that he was aware that Gettings had knee issues and that his report documented those problems. In response to the testimony of Gettings, Santiago was recalled to the witness stand by the city and testified that Gettings "said he had some knee issues from wrestling back in high school and [Gettings] stated that he had no problem standing or walking."

**{¶20}** We cannot ignore the fact that the one-leg-stand test and the walk-and-turn tests were performed by Gettings without Santiago's consideration of, and adaptation for, Gettings' alleged physical problem. Though the officer and Gettings provided conflicting testimony as to the seriousness of Gettings' knee problems, both sides admit that prior to administering those tests, Gettings advised Santiago that he had knee issues, which Santiago then documented in his report.

**{¶21}** In *State v. Lange*, 12th Dist. Butler No. CA2007-09-232, 2008-Ohio-3595, a defendant attempted to perform the walk-and-turn test but had problems successfully completing the test before he refused to continue. When the officer began to explain the one-leg-stand test to him, the defendant informed the officer that he had leg problems and the officer halted the test. The court determined that the "purpose of the walk and turn test to assist the officer in determining possible impairment is thwarted by the officer's lack of knowledge of appellee's leg problem." The Twelfth District then upheld the suppression of the results of the walk-and-turn field-sobriety test because the administering officer failed to consider or adapt the test for the defendant's leg problems.

**{¶22}** We find the holding of *Lange* persuasive in this case. Gettings informed Santiago that he had knee problems that Santiago testified he documented in his report. Additionally, Santiago read a portion of the NHTSA manual, which notes problems with both the walk-and-turn and the one-leg-stand tests in individuals with "leg" problems. Santiago acknowledged this restriction during the oral hearing. However, even knowing all of the above, Santiago provided no consideration or adaptation of the test for

Gettings' knee problems. The city provided no evidence to the court as to what adaptations or consideration the NHTSA manual requires, they simply disputed the extent of Gettings' knee problem.

{¶23} Here, the city has failed to prove that the walk-and-turn and one-leg-stand field-sobriety tests were performed in substantial compliance with the NHSTA requirements. Accordingly, the trial court erred in failing to suppress the results of both the walk-and-turn and one-leg-stand field-sobriety tests. *Lange, supra*; *State v. Baker*, 12th Dist. Warren No. CA2009-06-079, 2010-Ohio-1289.

{¶24} Gettings' first assignment of error is sustained.

{¶25} In his second assignment of error, Gettings argues that there was no probable cause to stop and arrest him for OVI. We disagree.

{¶26} In determining whether the police had probable cause to arrest appellant for OVI, we must determine whether, at the moment of arrest, the police had information sufficient to cause a prudent person to believe that the suspect was driving under the influence. *Beck v. Ohio*, 379 U.S. 89, 85 S.Ct. 223, 13 L.Ed.2d 142 (1964). A probable-cause determination is based on the "totality" of facts and circumstances within a police officer's knowledge. *State v. Miller*, 117 Ohio App.3d 750, 761, 691 N.E.2d 703 (11th Dist.1997). While the odor of alcohol, glassy eyes, slurred speech, and other indicia of alcohol use by a driver are, in and of themselves, insufficient to constitute probable cause to arrest, they are factors to be considered in determining the existence of probable cause. *Kirtland Hills v. Deir*, 11th Dist. Lake No. 2004-L-005, 2005-Ohio-1563; *Dedejczyk*.

**{¶27}** Even where the results of field-sobriety tests are properly suppressed, this does not prohibit a police officer from testifying about his observations of a suspect while administering or attempting to administer field-sobriety tests. *State v. Schmitt*, 101 Ohio St.3d 79, 2004-Ohio-37, 801 N.E.2d 446. Although we concluded that the test results of the field-sobriety tests should have been suppressed, pursuant to *Schmitt*, Santiago's observations regarding Gettings' test performance are admissible in determining whether he had probable cause to arrest Gettings.

**{¶28}** Santiago testified that he witnessed Gettings weave out of his lane three times and cross halfway into the center lane at one point. Gettings' eyes were glassy, bloodshot and watery and his speech was noticeably slow and slurred. Gettings did not realize that he had been driving erratically and there was a strong odor of alcoholic beverage emanating from his person. Gettings provided several stories when asked where he had been and he failed to respond when Santiago asked him to recite the alphabet from D to P. Additionally, when asked to count backwards from 89 to 65, Gettings stopped when he reached 80.

**{¶29}** Regarding the field-sobriety tests, Santiago testified that during the walk-and-turn test, Gettings was unable to keep his balance during the instructions, stepped out of starting position, raised his arms more than six inches for balance, did not walk heel-to-toe, stepped off the line multiple times, lost balance while turning and turned incorrectly. Additionally, during the one-leg stand, Santiago testified that Gettings swayed while balancing, raised his arms more than six inches for balance, put his foot down and could not complete the test.

**{¶30}** Although Gettings attempts to explain all of the above, arguing that his lack of sleep and documented knee problems accounted for Santiago's observations, the trial court, in ruling on a motion to dismiss, evaluated the credibility of this testimony and determined that Santiago had probable cause to stop and arrest Gettings for OVI. Based on the observations noted above, we find this determination to be supported by competent, credible evidence and affirm the trial court's ruling that Santiago had probable cause to stop and arrest Gettings for OVI. *See Burnside, supra.*

**{¶31}** Gettings' second assignment of error is overruled.

**{¶32}** Accordingly, based on our decision that field-sobriety-test results should have been suppressed, it is necessary to remand this case for a determination as to whether there was sufficient evidence, without the field-sobriety-test-results, to support Gettings' conviction. *See State v. Purdy*, 6th Dist. Huron No. H-04-008, 2004-Ohio-7069.

**{¶33}** The judgment of the trial court is affirmed in part, reversed in part and remanded.

It is ordered that appellant and appellee share the costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the lower court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

EILEEN A. GALLAGHER, JUDGE

MARY J. BOYLE, P.J., and
KENNETH A. ROCCO, J., CONCUR