[Cite as *State v. Harris*, 2019-Ohio-4402.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

WARREN COUNTY

| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| Appellee, | : | CASE NO. CA2019-03-024 |
| | : | O P I N I O N |
| - vs - | | 10/28/2019 |
| | : | |
| JONATHAN PAUL HARRIS, | : | |
| Appellant. | : | |

CRIMINAL APPEAL FROM WARREN COUNTY COURT OF COMMON PLEAS
Case No. 18CR34222

David P. Fornshell, Warren County Prosecuting Attorney, Kirsten A. Brandt, 520 Justice Drive, Lebanon, Ohio 45036, for appellee

Ostrowski Law Firm Co., L.P.A., Andrea G. Ostrowski, 20 South Main Street, Springboro, Ohio 45066, for appellant

**RINGLAND, J.**

{¶ 1} Appellant, Jonathan Paul Harris, appeals from his conviction in the Warren County Court of Common Pleas for operating a motor vehicle while under the influence of alcohol or drug of abuse. For the reasons outlined below, we affirm.

{¶ 2} On April 25, 2018, a state trooper was dispatched to the scene of a single-vehicle accident. At the scene, the trooper observed significant damage to the right side of

the roadway, including a knocked-down mailbox, a gouge mark on the roadway, and a severely damaged vehicle that was upright next to a tree. When the trooper arrived, Harris was laying on a stretcher and paramedics were attending to him. At that time, the trooper observed that Harris' pupils were dilated, his eyes were bloodshot and glassy, and Harris was generally unresponsive. The paramedics then informed the trooper that Harris appeared to be under the influence of drugs or alcohol. Due to the extent of the injuries, the paramedics transferred Harris to the hospital shortly thereafter. Because the trooper estimated that his investigation at the scene would be lengthy, he directed another officer to make contact with Harris at the hospital. At that time, the trooper believed Harris was under the influence of alcohol or drugs.

{¶ 3} After Harris was removed from the scene, the trooper began his accident investigation. As a result of his investigation, the trooper determined that the vehicle had driven off the right side of the roadway and struck a mailbox and driveway culvert. Due to the speed of the vehicle at the time it struck the culvert, the vehicle went airborne and overturned. The vehicle then landed on its side and struck a utility pole. The trooper further determined that, aside from Harris, there were no other occupants or passengers in the vehicle at the time of the accident.

{¶ 4} After completing his investigation at the scene, the trooper went to Bethesda Arrow Springs hospital where Harris had been transported. When the trooper arrived, the other officer was with Harris and taking his statement. At that point, the officer indicated he could not understand Harris' writing or speech and that he had written a partial statement on Harris' behalf. The officer then ceased the interview and the trooper introduced himself to Harris and continued the investigation. According to the trooper, he was unaware of what initial statements Harris had made to the second officer.

{¶ 5} While speaking with Harris, the trooper noticed Harris was slurring his words,

was unable to understand basic commands, had bloodshot glassy eyes, and his pupils were dilated. Based upon the trooper's training and experience, he believed Harris was under the influence. As a result of the initial investigation and Harris' condition, the trooper showed Harris a copy of the BMV 2255 implied consent form ("implied consent form"), which he proceeded to read to Harris. The trooper indicated that upon reading the implied consent form to Harris, he explained to Harris that he was under arrest for his sixth "OVI", which was a felony. At that point, the trooper asked Harris if he would provide a urine sample and explained the potential consequences Harris could face if he refused to submit a sample. Ultimately, Harris agreed to provide a sample and signed the implied consent form in the trooper's presence. The trooper then obtained a urine sample, which he sealed and mailed to the crime lab. After processing, it was determined that Harris had a concentration of .224 grams by weight of alcohol in his urine.

{¶ 6} The trooper then continued his interview with Harris. At the conclusion of his investigation, the trooper temporarily left the hospital to prepare a summons for the arrest. Due to Harris' medical condition, the trooper did not physically place Harris under arrest at that time, but advised Harris that he remained under arrest and was to stay in the building. Upon returning five minutes later, the trooper discovered that Harris had been discharged and had left the hospital. The trooper then "took off running through the hospital to see if [he] could get ahold of [Harris]." After searching, the trooper discovered that Harris had jumped into a pickup truck in the parking lot, which the trooper physically blocked from exiting. The trooper then issued Harris the summons.

{¶ 7} In June 2018, Harris was indicted for operation while under the influence of alcohol or drug abuse in violation of R.C. 4511.19(A)(1) and 4511.19(A)(1)(e). Each count had specifications that Harris had previously been convicted of or pleaded guilty to five or more equivalent offenses within the last 20 years. Harris initially pleaded not guilty to the

- 3 -

charges.

{¶ 8} In August 2018, Harris filed a motion to suppress, wherein he argued that the evidence obtained from the warrantless seizure and search of his urine, any statements he made to the police, and any evidence obtained as a result of his warrantless arrest should be suppressed. After a hearing, the trial court denied Harris' motion. Thereafter, Harris entered a plea of no contest and was found guilty of the two offenses. Count two and its specification merged with count one and its specification for sentencing purposes, and Harris was sentenced to a total of two years in prison.

{¶ 9} Harris now appeals, raising one assignment of error for our review.

{¶ 10} Assignment of Error No. 1:

{¶ 11} THE TRIAL COURT ERRED WHEN IT OVERRULED DEFENDANT'S MOTION TO SUPPRESS.

{¶ 12} Harris argues that his motion to suppress should have been granted because he was not placed under arrest prior to being read the implied consent form.

{¶ 13} Appellate review of a ruling on a motion to suppress presents a mixed question of law and fact. *State v. Burkhead*, 12th Dist. Preble No. CA2008-11-022, 2009-Ohio-4466, ¶ 7; *State v. Burnside*, 100 Ohio St. 3d 152, 2003-Ohio-5372, ¶ 8. When considering a motion to suppress, the trial court, as the trier of fact, is in the best position to weigh the evidence in order to resolve factual questions and evaluate witness credibility. *State v. Eyer*, 12th Dist. Warren No. CA2007-06-071, 2008-Ohio-1193, ¶ 8. In turn, the appellate court must accept the trial court's findings of fact so long as they are supported by competent, credible evidence. *State v. Lange*, 12th Dist. Butler No. CA2007-09-232, 2008 Ohio 3595, ¶4; *State v. Bryson*, 142 Ohio App.3d 397, 402 (12th Dist.2001). After accepting the trial court's factual findings as true, the appellate court must then determine, as a matter of law, and without deferring to the trial court's conclusions, whether the trial court applied the

appropriate legal standard. *State v. Forbes*, 12th Dist. Preble No. CA2007-01-001, 2007-Ohio-6412, ¶ 29; *State v. Dierkes*, 11th Dist. Portage No. 2008-P-0085, 2009-Ohio-2530, ¶ 17.

{¶ 14} According to Ohio law, a valid arrest supported by probable cause to believe a defendant to have been operating a motor vehicle while under the influence of alcohol is a condition precedent to obtaining a defendant's consent to take a blood-alcohol test after reading the implied consent form. *City of Hamilton v. Baker*, 12th Dist. Butler No. CA93-09-170, 1994 Ohio App. LEXIS 2098 (May 16, 1994), *citing State v. Risner*, 55 Ohio App.2d 77, 80 (3rd Dist.1977); R.C. 4511.191(A). In the absence of a valid arrest, consent obtained after a reading of the implied consent form is considered involuntary and the test results are inadmissible. *Id.* This is further reflected in the plain language of the implied consent statute, R.C. 4511.191, which states: "Any person who operates a vehicle * * * within this state * * * shall be deemed to have given consent to a chemical test * * * of the person's * * * urine *if arrested* for a violation of [R.C. 4511.19(A) or (B)]." (Emphasis added.) R.C. 4511.191(A)(2).

{¶ 15} In the instant matter, the trial court made findings of fact that the trooper had probable cause to arrest Harris and had informed Harris of his rights pursuant to the implied consent form, which requires that a person be placed under arrest. Harris does not dispute that probable cause existed for an arrest, a finding which we note is supported by the record. Rather, Harris disputes that an arrest took place before the trooper read the implied consent form to Harris.

{¶ 16} The Supreme Court of Ohio has held that "an arrest occurs when the following four requisite elements are involved: (1) An intent to arrest, (2) under a real or pretended authority, (3) accompanied by an actual or constructive seizure or detention of the person, and (4) which is so understood by the person arrested." *State v. Horton*, 12th Dist. Clermont No. CA2000-04-024, 2000 Ohio App. LEXIS 6098 (December 26, 2000), *citing State v.*

- 5 -

*Darrah*, 64 Ohio St. 2d 22, 26 (1980). With regard to arrests associated with the implied consent form, this court has held that "the reading of the implied consent form not only manifests the trooper's intent to arrest, it also amounts to a seizure of [the defendant]." *Baker* at *8, quoting *State v. Fields*, 12th Dist. Clermont No. CA93-04-025, 1993 Ohio App. LEXIS 5685 (Nov. 29, 1993).

{¶ 17} Harris initially argues no valid arrest occurred because the trooper had no intention of detaining Harris or taking him to jail, which he contends is evidenced by the fact that the trooper left Harris alone in the hospital. However, pursuant to the above, the trooper's intent to arrest Harris, as well as a constructive seizure of Harris, occurred upon the trooper's reading of the implied consent form. As such, we reject Harris' argument that the trooper had no intention of arresting Harris.

{¶ 18} The record further reflects that Harris was aware that he was under arrest at the time the trooper read the implied consent form to him. Notably, the first line of the implied consent form states: "You now are under arrest for operating a vehicle under the influence of alcohol, a drug, or a combination of them." The record indicates Harris signed the informed consent form, acknowledging that the trooper had read him the form, and that he was complicit in providing a urine sample. Moreover, although the trooper did not physically restrain Harris, he consistently testified that Harris was under arrest for operating a motor vehicle while under the influence of alcohol or drugs. According to the trooper, he did not place Harris physically under arrest because "he was on a medical bed being * * * taken care of by the doctors [and] nurses." Notwithstanding the lack of physical incarceration, the record indicates the trooper advised Harris that he was under arrest, that he was not free to leave the hospital, and that he was to remain in the hospital if discharged. Despite the trooper's advisements, Harris fled from the hospital and attempted to exit the parking lot in order to avoid receiving his citation. These facts establish that Harris understood he was under arrest

prior to his discharge.

{¶ 19} In light of the foregoing, we find that the trooper complied with the informed consent statute and that the arrest requirement for valid implied consent was satisfied. Because we find that Harris was properly under arrest at the time the implied consent form was read to him, his consent to provide a urine sample for testing is valid, and the test results are admissible. Accordingly, we find the trial court did not err in denying Harris' motion to suppress.

{¶ 20} Judgment affirmed.

HENDRICKSON, P.J., and S. POWELL, J., concur.