[Cite as *State v. Scott*, 2022-Ohio-2071.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
LUCAS COUNTY

State of Ohio/City of Sylvania

    Appellee

v.

Brian K. Scott

    Appellant

Court of Appeals No.  L-21-1128

Trial Court No.  TRC2000745A

**DECISION AND JUDGMENT**

Decided:  June 17, 2022

* * * * *

Daniel C. Arnold, City of Sylvania Prosecuting Attorney, for appellee.

Martin E. Mohler, for appellant.

* * * * *

**MAYLE, J.**

{¶ 1} Defendant-appellant, Brian K. Scott, appeals the June 10, 2021 judgment of the Sylvania Municipal Court, convicting him of operating a motor vehicle under the influence of alcohol.  For the following reasons, we affirm the trial court judgment.

# I.    Background

{¶ 2} On July 6, 2019, Sergeant Jason Metzger was driving westbound on Bancroft Street near Centennial when he observed Brian Scott driving his truck on eastbound Bancroft Street without wearing a safety belt.  He made a u-turn, followed Scott, and noticed the truck weave within the lane.  When Scott reached the intersection of Bancroft Street and King Road to stop for a red light, Metzger saw that he failed to stop his vehicle before the stop bar—the back tires of the truck were *on* the stop bar and the front of his vehicle protruded into the crosswalk.  Metzger initiated a stop of Scott's vehicle for his failure to stop at the stop bar.

{¶ 3} When Metzger approached Scott's vehicle, he smelled a strong odor of alcohol and noticed that Scott's speech was slurred.  He asked Scott to step out of the vehicle to perform field sobriety tests.  Scott's walk was staggered.  Metzger asked him if he had any physical ailments.  Scott told him that he has problems with his left side due to a car crash 11 years earlier.  He also said that he wears glasses but did not have them with him.

{¶ 4} Metzger administered field sobriety tests, including the horizontal gaze nystagmus ("HGN") test, the walk-and-turn test, and the one-leg stand.  In performing the HGN test, Metzger noticed—in both of Scott's eyes—distinct nystagmus at maximum deviation, lack of smooth pursuit, and onset of nystagmus before 45 degrees.  This constituted six out of six clues of impairment.  With the walk-and-turn test, Scott stopped

2.

to steady himself and stepped off the line while walking—two out of eight clues of impairment. And on the one-leg stand, Scott swayed while balancing, raised his arms six inches for balance, and put his foot down.

{¶ 5} Based on Scott's performance on the field sobriety tests, Metzger felt that Scott was impaired and made the decision to arrest him for OVI, a violation of R.C. 4511.19(A)(1)(A) and (A)(2). He also ticketed Scott for failing to wear a seatbelt, a violation of R.C. 4513.263(B)(1), and failing to stop at the stop bar, a violation of R.C. 4511.13(C).

{¶ 6} Scott moved to suppress evidence of the field sobriety tests, the observations and opinions of law enforcement officers who stopped, arrested, or tested him, statements made by Scott, and any statements to the effect that Scott refused to take a breath test. He claimed that Metzger lacked reasonable articulable suspicion to justify the traffic stop because (1) a vehicle cannot be stopped solely for a seatbelt violation; (2) weaving within one's own lane does not constitute a marked lanes violation; and (3) there is no requirement that a driver bring his or vehicle to a stop *before* a stop bar.

{¶ 7} Scott also argued that Metzger lacked probable cause to detain and arrest him. Although he conceded that some of Metzger's observations may have been sufficient to merit field sobriety tests, he claimed they did not provide probable cause for an arrest. He argued that Metzger did not perform field sobriety tests in substantial compliance with NHTSA standards because (1) in performing the HGN test, when

3.

checking for smooth pursuit, Metzger took one second—not two seconds—to move his finger from the center to the side; (2) in performing the HGN test, when checking for distinct nystagmus at maximum deviation, he held his finger at maximum deviation for three seconds instead of four; and (3) in performing the HGN test, when checking for onset of nystagmus before 45 degrees, he moved his finger too quickly, reaching the 45-degree angle in approximately three seconds instead of four.

{¶ 8} Scott claimed also that his leg injury from 11 years earlier impaired his ability to perform the walk-and-turn and one-leg-stand tests. He argued that Metzger was not qualified to testify to the procedures and results of the field sobriety tests because he is not trained or certified in the testing standards in effect at the time the tests were administered. Scott argued that evidence obtained as the result of the field sobriety tests must be suppressed.

{¶ 9} Finally, Scott argued that any statements he made before being read his *Miranda* rights must be suppressed "to the extent they were made under custodial interrogation" because they were obtained in violation of his Fifth-Amendment rights.

{¶ 10} In a judgment filed on February 3, 2021, the magistrate granted Scott's motion to suppress the results of the one-leg-stand test, but denied his motion in all other respects. She found that Metzger possessed reasonable, articulable suspicion of a stop-bar violation because Ohio courts, including the Third and Fourth Districts, have determined that a driver is required to come to a complete stop *before* the vehicle comes

4.

into contact with the stop-line. She found that Metzger had reasonable, articulable suspicion to perform field sobriety tests based on Scott's slurred speech, his stagger, and the strong odor of alcohol emanating from his person. She found that Metzger performed the HGN tests in substantial compliance with NHTSA requirements. And she found that Scott's left leg injury did not impair his ability to perform the walk-and-turn test because it did not involve standing on one leg. The magistrate concluded, however, that Metzger failed to explain how he had taken into consideration Scott's leg injury in performing the one-leg-stand test, thus she suppressed the results of that test. Finally, the magistrate found that Scott had not been subjected to a custodial interrogation for purposes of *Miranda*, therefore, his pre-*Miranda* statements need not be suppressed.

{¶ 11} The magistrate determined that Metzger had probable cause to arrest Scott based on his weaving within the lane of travel, Scott's slurred speech, staggered gait, and strong odor of alcohol emanating from his person, the six clues observed during the HGN tests and the two clues observed during the walk-and-turn test. Additionally, the magistrate noted that she had watched the DVD of the encounter and saw that Scott lost his balance more than once during the walk-and-turn test and, while not mentioned by Metzger, she noticed that Scott's eyes were glassy. Based on the totality of the circumstances, she concluded that Metzger had probable cause to arrest Scott for an OVI offense.

5.

{¶ 12} Scott filed objections to the magistrate's decision, but because he failed to do so within 14 days of the decision, the trial court overruled his objections as untimely and affirmed the magistrate's decision. Following the denial of his motion to suppress, Scott entered a plea of no contest to the OVI. The court found him guilty and sentenced him to 180 days in jail with 169 days suspended, two years' probation, a 24-month license suspension, a 90-day vehicle immobilization, restricted plates, an interlock system, a fine of $525.00, and court costs.

{¶ 13} Scott appealed. He assigns the following errors for our review:

Assignment of Error No. 1: The trial court erred in finding there was reasonable, articulable suspicion justifying the traffic stop of Appellant's vehicle[.]

Assignment of Error No. 2: The trial court erred in finding Sergeant Metzger administered certain field sobriety tests upon Appellant in substantial compliance with applicable NHTSA standards[.]

## II. Law and Analysis

{¶ 14} Scott's assignments of error challenge the trial court's denial of his motion to suppress. He argues that (1) the officer lacked justification for the traffic stop, and (2) the officer failed to properly administer field sobriety tests. We address each of his challenges below, but before doing so, we must consider the appropriate standard of review to be applied here.

6.

## A. Standard of Review

{¶ 15} Both parties misstate the standard of review. Scott claims we must uphold the trial court's factual conclusions if they are supported by competent, credible evidence, then review de novo the application of the law to the facts. The city claims that we review de novo both the trial court's conclusion that Metzger had reasonable, articulable suspicion for initiating the traffic stop and its conclusion that the officer substantially complied with NHTSA procedures in administering field sobriety tests. We find, however, that a plain-error standard-of-review applies here because Scott failed to timely file objections to the magistrate's decision.

{¶ 16} "Except for a claim of plain error, a party shall not assign on appeal the court's adoption of any factual finding or legal conclusion * * * unless the party has objected to that finding or conclusion as required by Crim.R. 19(D)(3)(b)." Crim.R. 19(D)(3)(b)(iv). Under Crim.R. 19(D)(3)(b), "[a] party may file written objections to a magistrate's decision within fourteen days of the filing of the decision." "A party's failure to object in accordance with Crim.R. 19 results in a forfeiture." *State v. Bardwell-Patino*, 9th Dist. Medina No. 20CA0043-M, 2021-Ohio-2048, ¶ 31, citing Crim.R. 19(D)(3)(b)(iv).

{¶ 17} Here, Scott failed to file objections to the magistrate's decision within 14 days of the decision. The magistrate's decision was filed February 3, 2021;[1] Scott filed

---

[1] Scott references February 4, 2021, as the date of the decision, but the docket and file stamp show February 3, 2021.

his objections on March 19, 2021.[2] To excuse his untimeliness, Scott claimed that he did not receive the decision until February 11, 2021, "shortly before" the 14-day deadline for filing objections.

{¶ 18} "For good cause shown, the court shall allow a reasonable extension of time for a party to file a motion to set aside a magistrate's order or file objections to a magistrate's decision." Crim.R. 19(D)(5). It is within the trial court's discretion to determine whether good cause has been shown. *State v. Graupmann*, 2d Dist. Greene No. 2013 CA 65, 2014-Ohio-3637, ¶ 9. We review the trial court's determination for an abuse of discretion.

{¶ 19} The court overruled Scott's objections as untimely because it found that even assuming Scott did not receive the decision until February 11, 2021, he could have (1) filed objections by the due date, February 18, 2021, or (2) requested an extension of time for filing objections. Instead, he waited over a month to file objections. The court found that Scott failed to show good cause for failing to file timely objections.

{¶ 20} We agree with the trial court. It was incumbent on Scott to either file objections within the time allowed for doing so or seek an extension of time. Instead, Scott simply filed objections a month late, assuming that the court would accept that his objections were "timely-made under the circumstances." We find no abuse of discretion

---

[2] The docket shows that Scott's objections were faxed on March 22, 2021, but the file stamp and fax line show March 19, 2021.

in the trial court's determination to the contrary. As such, we conclude that Scott has forfeited all but plain error.

{¶ 21} Plain error is error that affects substantial rights. Crim.R. 52(B). In determining whether plain error occurred, we must examine the alleged error in light of all of the evidence that has been properly admitted. *State v. Hill*, 92 Ohio St.3d 191, 203, 749 N.E.2d 274 (2001). Plain error should be found "only in exceptional circumstances and only to prevent a manifest miscarriage of justice." *Id.,* citing *State v. Long*, 53 Ohio St.2d 91, 372 N.E.2d 804 (1978), paragraph three of the syllabus. "Reversal is warranted only if the outcome of the [proceedings] clearly would have been different absent the error." *Id.,* citing *Long* at paragraph two of the syllabus.

## B. Reasonable, Articulable Suspicion for the Stop

{¶ 22} In his first assignment of error, Scott argues that Metzger lacked reasonable, articulable suspicion to initiate a stop of his vehicle. He claims that a violation of R.C. 4511.13(C)(1)(a) does not occur where a driver stops his vehicle *on* the stop line. He also contends that "the trial court's finding of fact that the stop bar was 'clearly marked' is not supported by the available evidence and thereby improper." The state responds that a driver must stop *before* the stop line. And even assuming that no stop line existed, the state maintains that Scott was required to stop before the crosswalk. The state insists that even if R.C. 4511.13(C)(1)(a) is ambiguous, the evidence need not

9.

be suppressed because Metzger acted in good faith because he reasonably and mistakenly applied R.C. 4511.13(C).

{¶ 23} "The Fourth Amendment to the United States Constitution and Section 14, Article I of the Ohio Constitution guarantee the right to be free from unreasonable searches and seizures." *State v. Mays*, 119 Ohio St.3d 406, 2008-Ohio-4539, 894 N.E.2d 1204, ¶ 7, citing *State v. Orr*, 91 Ohio St.3d 389, 391, 745 N.E.2d 1036 (2001). "A traffic stop for a suspected violation of law is a 'seizure' of the occupants of the vehicle and therefore must be conducted in accordance with the Fourth Amendment." *Heien v. North Carolina*, 574 U.S. 54, 60, 135 S.Ct. 530, 190 L.Ed.2d 475 (2014). This type of seizure is justified if an officer has a "reasonable suspicion"—i.e., "a particularized and objective basis" to suspect—that the person stopped has broken the law. *Id.* at 60. In other words, a traffic stop is constitutionally valid if an officer has a reasonable and articulable suspicion that a motorist has committed a traffic violation. *Mays* at ¶ 7-8.

{¶ 24} Under R.C. 4511.13(C)(1)(a), "[v]ehicular traffic * * * facing a steady circular red signal indication * * * shall stop *at* a clearly marked stop line, but if none, before entering the crosswalk on the near side of the intersection * * *." (Emphasis added.) Metzger testified here that Scott's vehicle was over the stop line such that his back tires were on the stop line and the front of his vehicle protruded into the crosswalk.

{¶ 25} Scott argues that "at" as used in R.C. 4511.13(C)(1)(a) does not mean "before," therefore, he did not violate the statute when he stopped *on* the stop bar. He

10.

correctly notes that neither the Ohio Supreme Court nor this court have interpreted what it means to stop "at" a clearly-marked stop line. However, numerous districts have interpreted what it means to stop "at" a clearly-marked stop line for purposes of R.C. 4511.13(C)(1)(a) and other similarly-worded statutes and ordinances.

{¶ 26} In *State v. Drushal*, 9th Dist. Wayne No. 13CA0028, 2014-Ohio-3088, the Ninth District Court of Appeals, interpreting the analogous Wooster Codified Ordinance 331.19(a), acknowledged that as defined in Merriam–Webster's Collegiate Dictionary, "at" means "'in, on, or near[.]'"—it does not mean "before." *Id.* at ¶ 12, quoting *Merriam–Webster's Collegiate Dictionary,* 77 (11th Ed.2005). It, therefore, concluded that the officer lacked reasonable, articulable suspicion to initiate a stop of defendant's vehicle for his failure to stop *before* the stop line.

{¶ 27} The Third District, on the other hand, has found that "at a clearly marked stop line"—as used in R.C. 4511.43(A) (pertaining to the obligation to stop at a stop sign)—is unclear and ambiguous. *State v. Miller*, 3d Dist. Marion No. 9-14-50, 2015-Ohio-3529, ¶ 19. After considering the "consequences of a particular construction of the statute, the object sought to be obtained by the statute, and the administrative construction of the statute," it concluded that the statute makes it "unlawful to stop astride a clearly marked stop line," thus "a motorist must stop his or her vehicle prior to the point at which the front-most portion of his or her vehicle will break the plane of the outermost edge of that clearly marked stop line." *Id.* at ¶ 19, 24. The Fourth District has

11.

held consistently. *See State v. Levine*, 4th Dist. Washington No. 18CA19, 2019-Ohio-265, ¶ 23 ("[W]e hold that the statutory requirement to stop 'at a clearly marked stop line' requires a driver to come to a complete stop *before* the vehicle comes into contact with the stop line.").

{¶ 28} While the Third and Fourth Districts and the Ninth District have taken contrary positions on what it means to stop "at" a stop line, two other appellate districts have been presented with the issue and found it unnecessary to take a position. In *State v. Deacey*, 2d Dist. Montgomery No. 27408, 2017-Ohio-8102, ¶ 59, in determining whether the trial court erred in denying defendant's motion to suppress evidence, the Second District held that even if the officer incorrectly interpreted the stop-bar ordinance, his interpretation of the ordinance was reasonable, therefore, suppression of the evidence was not justified. The Fifth District reached the same conclusion. *See State v. Goss*, 5th Dist. Ashland No. 16 COA 023, 2017-Ohio-161, ¶ 15-17 (finding that stop-line statute was not clear and unambiguous, therefore, officer had reasonable and articulable suspicion of traffic violation where defendant stopped his vehicle *on* the stop line, and trial court properly denied motion to suppress evidence).

{¶ 29} Like the Second and Fifth Districts, we find that Scott's assignment of error can—and here, it *should*—be resolved without interpreting the language of the statute. This is because we are reviewing the trial court decision for plain error due to Scott's failure to file timely objections to the magistrate's decision. As previously stated,

12.

reversal for plain error is warranted only if the outcome of the proceedings clearly would have been different absent the error. In this case, regardless of whether we would ultimately interpret "*at* a clearly marked stop line" in the manner advocated by Scott, the outcome of the proceedings would not clearly have been different absent the purported error. We reach this conclusion for two reasons.

{¶ 30} First, Ohio appellate courts have found ambiguity and do not agree on the proper interpretation of "*at* a clearly marked stop line," and neither this district nor the Ohio Supreme Court have interpreted the phrase. Thus, it was objectively reasonable for Metzger to believe that Scott violated the statute when he drove over the stop line. And a police officer's objectively reasonable belief that a traffic violation has occurred, including reasonable mistakes of law, can constitute reasonable suspicion to justify a traffic stop. *Heien*, 574 U.S. at 61, 66 135 S.Ct. 530, 190 L.Ed.2d 475 (holding that there is no reason to differentiate between reasonable mistakes of fact, which may form the basis of a valid stop, and mistakes of law, so long as the mistake is *objectively* reasonable). Although Scott cites to *State v. Babcock,* 6th Dist. Wood No. WD-12-025, 2013-Ohio-2366—in which we found that the good-faith exception to the exclusionary rule is inapplicable where an officer initiates a stop based on a mistake of law (as opposed to a mistake of fact)—this court subsequently recognized that the holding of *Babcock* was undermined by *Heien. City of Vermilion v. Lane*, 6th Dist. Erie No. E-18-008, 2018-Ohio-5284, ¶ 13. In *Lane*, we applied *Heien* and found that the statute at issue

(a marked-lanes violation under R.C. 4511.33(A)(1)), was not ambiguous, thus it was not objectively reasonable for the trooper to initiate a stop of appellant's vehicle. Here, as explained, ambiguity exists, rendering Metzger's interpretation of the statute objectively reasonable under the circumstances—thus, suppression of the evidence would not be warranted *even if* we assume that Scott's interpretation of the statute is correct.

{¶ 31} Second, Metzger testified—and the recording of the incident demonstrates—that the *rear* tires of Scott's truck were on, and almost entirely *over*, the clearly-marked stop-line, and his truck proceeded well into the crosswalk without stopping. Even if we were to accept Scott's suggestion that the stop bar was not "clearly marked"—in fact, it is plainly visible in the recording—R.C. 4511.13(C)(1)(a) expressly states that if there is no "clearly marked stop line," a vehicle must stop "*before* entering the crosswalk." (Emphasis added.) Scott did not stop his vehicle before entering the crosswalk.

{¶ 32} Accordingly, because the outcome of the proceedings would not clearly have been different absent the trial court's alleged error in interpreting "at a clearly marked stop line," we find no plain error in its decision denying Scott's motion to suppress evidence arising from the stop of his vehicle for violation of R.C. 4511.13(C)(1)(a). We find his first assignment of error not well-taken.

## C. The Administration of the Field Sobriety Tests

{¶ 33} In his second assignment of error, Scott argues that Metzger failed to perform field sobriety tests in conformance with applicable NHTSA guidelines. Specifically, he claims that (1) in performing the HGN test, when checking for smooth pursuit, Metzger took one second—not two seconds—to move his finger from the center to the side; (2) in performing the HGN test, when checking for distinct nystagmus at maximum deviation, he held his finger at maximum deviation for three seconds instead of four; and (3) in performing the HGN test, when checking for onset of nystagmus before 45 degrees, he moved his finger too quickly, reaching the 45-degree angle in approximately three seconds instead of four. He emphasizes that Metzger conceded that he performed the HGN test "a little fast." Scott also argues that the test criteria for the walk-and-turn test were not valid because of his prior leg injury.

{¶ 34} The city responds that Metzger substantially complied with NHTSA guidelines in performing field sobriety tests. It maintains that the timing required to complete the various tests are approximate, and it cites other Ohio cases that have found substantial compliance with NHTSA guidelines even though the officer completed the tests more quickly than recommended in the guidelines.

{¶ 35} Under R.C. 4511.19(D)(4)(b), an arresting officer may testify concerning the results of field sobriety tests—and the results of those tests may be introduced and

15.

admitted into evidence—if it is shown by clear and convincing evidence that the officer administered the tests in substantial compliance with the NHTSA testing standards. *See also State v. Schmitt*, 101 Ohio St.3d 79, 2004-Ohio-37, 801 N.E.2d 446, ¶ 9. The standards typically applicable to field sobriety tests are those from the NHTSA manual. *State v. Clark*, 12th Dist. Brown No. CA2009-10-039, 2010-Ohio-4567, ¶ 11.

{¶ 36} The Second District explained the tests at issue here and described the times recommended by NHTSA for performing the HGN tests:

> The first portion of the [HGN] test determines if the eyes have a lack of smooth pursuit, i.e., do not follow the stimulus or bounce around. The second part of the test measures sustained nystagmus, bouncing or jerking of the eyes, at maximum deviation, and the third is onset of nystagmus prior to 45 degrees. The NHTSA protocol articulates certain approximate and required time requirements for the three phases of the exam. Specifically, when checking for distinct nystagmus at maximum deviation, the examiner must hold the stimulus at maximum deviation for a minimum of four seconds. But when checking for smooth pursuit, the time to complete the tracking of one eye should take approximately four seconds, and when checking for the onset of nystagmus prior to 45 degrees, the tracking time left to right should also be approximately four seconds.

16.

*State v. Murray*, 2d Dist. Montgomery No. 28373, 2020-Ohio-45, ¶ 20.

{¶ 37} Ohio courts recognize that the time set forth in the NHTSA manual for completing the various elements of the HGN test are approximate. *State v. Scott*, 5th Dist. Fairfield No. 2020 CA 00015, 2021-Ohio-156, ¶ 28; *Clark* at ¶ 23; *State v. Mai*, 2d Dist. Greene No. 2005-CA-115, 2006-Ohio-1430, ¶ 27. Numerous courts have found no error in the admission of the results of field sobriety tests that were completed more quickly than recommended in the NHTSA guidelines. *See e.g., Cleveland Heights v. Schwabauer,* Cuyahoga App. No. 84249, 2005-Ohio-24, ¶ 24-25 (finding substantial compliance even though officer checked onset of nystagmus prior to 45 degrees by moving the stimulus across the field of vision for two to three seconds instead of four seconds); *State v. Lange*, 12th Dist. Butler No. CA2007-09-232, 2008-Ohio-3595, ¶ 11 (finding substantial compliance where officer, in performing the portion of the HGN test that measures the onset of nystagmus prior to 45 degrees, took two seconds to move the stimulus rather than four seconds); *State v. Tyner*, 2d Dist. Montgomery No. 25405, 2014-Ohio-2809, f.n.3 (finding substantial compliance even though officer admitted that he was "a little quick" and did not hold stimulus for full four seconds); *Clark* at ¶ 32-33 (finding substantial compliance even though officer moved stimulus at a speed of two seconds, rather than four seconds as recommended in the NHTSA manual).

{¶ 38} As for Scott's claim that the test criteria for the walk-and-turn test were not valid because of his prior leg injury, the trial court determined that even though Scott

17.

informed Metzger that his injury prevented him from standing on one foot, that test "did not involve standing on one foot," therefore, it was properly administered. We agree with the trial court that Scott provided no information to Metzger suggesting that he could not perform the walk-and-turn test. *See State v. Matzinger*, 2017-Ohio-324, 81 N.E.3d 841, ¶ 26 (4th Dist.) (finding substantial compliance with NHTSA guidelines in administering one-leg stand and walk-and-turn tests despite an unsubstantiated claim by defendant that he suffered from a prior leg injury). And Scott presented no evidence at the suppression hearing that would support his claim that the results of that test should be disregarded. *See State v. Hall*, 2d Dist. Clark No. 05CA0006, 2005-Ohio-6672, ¶ 25 (explaining that officers' awareness of defendant's alleged physical defect "permitted Defendant to question the judgments the officer made concerning Defendant's performance of those tests in relation to the probable cause to arrest issue," but noting the absence of evidence on this point).

{¶ 39} But even if we were to ignore the results of the walk-and-turn test, we would find no plain error here because Metzger had probable cause to arrest Scott for OVI without the results of that test. In other words, no prejudice resulted to Scott.

{¶ 40} An arresting officer must have probable cause to make a warrantless arrest. *State v. Timson,* 38 Ohio St.2d 122, 127, 311 N.E.2d 16 (1974). "Probable cause to conduct a warrantless arrest exists when police have, at the moment of arrest, knowledge of facts and circumstances grounded in reasonably trustworthy information to warrant a

belief by a prudent person that an offense has been committed by the person to be arrested." *State v. Jenkins*, 6th Dist. Lucas No. L-97-1303, 1998 WL 161190, *6 (Mar. 31, 1998), citing *Beck v. Ohio*, 379 U.S. 89, 91, 85 S.Ct. 223, 13 L.Ed.2d 142 (1964). "Examples of circumstances that may support or undermine probable cause in an OVI case include the manner of driving, the day and time, the driver's appearance and ability to communicate, including glassy and bloodshot eyes and slurred speech, the driver's behavior and cooperation, the driver's coordination and balance, the smell of alcohol, the presence of alcohol containers in the vehicle, the admission of drinking alcohol or other incriminating statements, and the driver's performance on field sobriety tests." (Citations omitted.) *State v. Baah*, 2016-Ohio-7131, 72 N.E.3d 205, ¶ 21-22 (10th Dist.).

{¶ 41} Here, in addition to the six clues exhibited during the HGN test, Metzger detected a strong odor of alcohol emanating from Scott, Scott's speech was slurred, and his walk was staggered—Scott's slurred speech and staggered gait were apparent in the recording of the encounter. We conclude that Metzger had probable cause to arrest Scott even without the clues provided in Scott's performance of the walk-and-turn test. *See Baah* at ¶ 26 ("[E]ven if appellee passed both the walk-and-turn test and one-leg-stand test and the alphabet test is not considered * * *, at the moment of arrest," the officer had "sufficient information to cause a prudent person to believe appellee was operating a vehicle under the influence," and therefore, had probable cause to arrest).

19.

{¶ 42} Accordingly, we find no plain error in the trial court's decision denying Scott's motion to suppress the results of the field sobriety tests. We find his second assignment of error not well-taken.

### III.    Conclusion

{¶ 43} We find no plain error in the trial court's decision denying Scott's motion to suppress evidence. Given the ambiguity in the language of the statute and the fact that Scott's vehicle protruded well into the crosswalk, the officer had an objectively reasonable basis to believe a violation of R.C. 4511.13(C) had occurred, the initial stop of Scott's vehicle was, therefore, justified, and the suppression of evidence was not warranted. We find Scott's first assignment of error not well-taken.

{¶ 44} Additionally, the officer conducted field sobriety tests in substantial compliance with NHTSA guidelines. And even ignoring the results of the walk-and-turn test, the officer had probable cause to arrest based on the clues exhibited during the HGN test, the strong odor of alcohol emanating from Scott, Scott's slurred speech, and his staggered gait. We, therefore, find no plain error in the trial court decision denying his motion to suppress the results of those tests. We find his second assignment of error not well-taken.

{¶ 45} We affirm the June 10, 2021 judgment of the Sylvania Municipal Court. Scott is ordered to pay the costs of this appeal under App.R. 24.

Judgment affirmed.

20.

State of Ohio/City of Sylvania
v. Brian K. Scott
L-21-1128


A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.


Christine E. Mayle, J.                                                   _____

                                                                          JUDGE

Gene A. Zmuda, J.


Myron C. Duhart, P.J.                                                    _____
CONCUR.

                                                                          JUDGE


                                                                          _____

                                                                          JUDGE

This decision is subject to further editing by the Supreme Court of Ohio's Reporter of Decisions. Parties interested in viewing the final reported version are advised to visit the Ohio Supreme Court's web site at: http://www.supremecourt.ohio.gov/ROD/docs/.